UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

FILED
OCT 5 2012
CLERK, US DISTRICT COURT
NORFOLK, VA

| | |
|---|---|
| MDR SPECIALTY DISTRIBUTION CORPORATION, ) ) ) Plaintiff, ) ) v. ) ) INTERNATIONAL COMMUNICATIONS GROUP, INC., ) ) ) and ) ) TO HAVE AND TO HOLD, LLC, ) ) Defendants. ) ) | Civil Action No. 4:12cv163 |

## COMPLAINT

Plaintiff, MDR Specialty Distribution Corporation, by and through its attorneys, Lawrence H. Woodward Jr. and Shuttleworth, Ruloff, Swain, Haddad and Morecock, moves the Court for entry of judgment in its favor against International Communications Group, Inc and To Have and To Hold, LLC and in support of such Complaint avers as follows:

### NATURE OF ACTION

1. Plaintiff MDR Specialty Distribution Group (hereinafter "Plaintiff" or "MDR"), a medical supply company, is seeking damages against Defendants International Communications Group, Inc (hereinafter "ICG") and To Have and To Hold, LLC (hereinafter "THTH") for breach of contract, negligence, breach of fiduciary duty and trespass.

2. Plaintiff entered into a lease agreement with ICG whereby MDR leased ICG's warehouse for storage of medical supplies. After leasing the space to MDR, ICG leased additional space in the warehouse already occupied by MDR, to THTH, a movie production company that proceeded to construct a movie set in the warehouse. The construction debris entered MDR's space, damaging its product to the point where it is no longer fit for sale.

## JURISDICTION AND VENUE

3. Jurisdiction exists pursuant to 28 U.S.C. §1332 as the Plaintiff is a resident of Virginia, and THTH is incorporated and headquartered in Texas and the value of the matter in controversy exceeds $75,000.

4. Venue in this district is proper as the warehouse and all of the events on which the claim is based occurred in the Eastern District of Virginia. Further, the lease between ICG and MDR was executed in Virginia as was the lease between ICG and THTH.

## PARTIES

5. Plaintiff MDR is a Virginia Corporation organized and existing under the laws of Virginia, with its principal place of business located at 230 Enterprise Drive, Newport News, Virginia.

6. Defendant ICG is a limited liability company organized and existing under the laws of Virginia, with its principal place of business located at 230 Picketts Line, Newport News, Virginia.

7. Defendant THTH is a corporation organized and existing under the laws of Texas with its principal place of business located at 8122 Data Point Drive Suite 1000, San Antonio, Texas 78229.

## FACTUAL ALLEGATIONS

8. On or about January 11, 2011, Plaintiff and Defendant ICG entered into a sublease agreement (EXH A) for use of the warehouse located in Oakland Industrial Park, 230 Picketts Line, Newport News, Virginia for purposes of storing nonhazardous medical supplies and equipment.

9. Plaintiff stored FDA regulated medical supplies and equipment in the warehouse.

10. Plaintiff agreed to rent the warehouse space for a term of three (3) months and fifteen (15) days, commencing on January 15, 2011 and ending on April 30, 2011 during which time Plaintiff agreed to pay Defendant ICG a total of $17,500 for the duration of the sublease.

11. Upon termination of the lease in May, Plaintiff continued to occupy the warehouse and pay rent to Defendant ICG thereby forming a month-to-month tenancy.

12. Subsequent to Plaintiff signing the lease agreement, Defendant ICG leased the space adjacent to the MDR warehouse to THTH for the purpose of building movie sets.

13. On or about July 22, 2011, ICG informed MDR that Defendant THTH was constructing movie sets in the adjacent warehouse. ICG was aware of the likelihood of dust and overspray could occur and damage Plaintiff's products. Defendants ICG and THTH agreed to cover Plaintiff's products with tarps prior to the commencement of any construction activities in the adjacent space.

14. On or about August 7, 2011, MDR became aware of the Defendants' failure to cover the products with tarps pursuant to their agreement resulting in an accumulation of sawdust and other debris on, and in, the medical supplies and equipment in the leased storage space.

15. MDR informed both Defendants to refrain from attempting to remove the sawdust as it may further contaminate the products upon. Defendants failed to heed this warning and attempted to remove the sawdust by blowing it off the cases, which resulted in sawdust further migrating into the boxes of equipment. Despite repeated requests by MDR that Defendants cease and desist the activities, Defendants continued construction of the movie set.

16. The types of medical equipment and supplies that MDR was storing in the warehouse are FDA regulated. Contamination of these products renders them unusable.

17. On November 1, 2011, ICG terminated MDR's lease in retaliation for its complaints. Subsequently, ICP would not allow THTH to access the premises to remove their product and at times restricted the areas in which THTH was allowed access. MDR was forced to remove its product and store it in another facility, separate and distinct from its current location, due to the debris accumulation and the sensitive nature of their products.

## CLAIMS FOR RELIEF
## COUNT ONE
### Defendant ICG Breach of Contract

18. MDR repeats, repleads and re-alleges the allegations set forth in paragraphs 1 – 17 as if more fully set forth herein.

19. Plaintiff and ICG entered into a binding and fully executed legal contract for the lease of the warehouse space located in Oakland Industrial Park located at 230 Picketts Line, Newport News, Virginia.

20. ICG was aware of MDR's business and the fact that MDR would be storing medical supplies in ICG's warehouse.

21. ICG breached the contract by failing to ensure that the space leased by Plaintiff remained clean, safe and usable for Plaintiff's intended purposes.

22. This breach of contract was a proximate cause of the subsequent damage to the medical equipment and supplies which rendered them unusable.

## COUNT TWO
### Defendant ICG Breach of Fiduciary Duty

23. Plaintiff repeats, repleads and re-alleges the allegations set forth in paragraphs 1 – 22 as if more fully set forth herein.

24. ICG breached its fiduciary duty by recklessly entering into a subsequent lease agreement without regard to possible negative implications on presently rented properties in the surrounding area.

25. ICG as lessor had a fiduciary duty to provide the leasehold property in the same quality and state of cleanliness as first inspected by the lessee, and to maintain the property to ensure sufficiency for the lessee's intended purposes and use.

26. ICG was aware of THTH's intended use of the space adjacent to Plaintiff's upon entering into the lease and failed to take proper measures to ensure that THTH's actions would not detrimentally affect the Plaintiff's leasehold located next door.

27. ICG's breach of fiduciary duty as aforesaid proximately caused damages to the Plaintiff's medical equipment and supplies.

## COUNT THREE
### Defendant ICG Negligence

28. Plaintiff repeats, repleads and re-alleges the allegations set forth in paragraphs 1 – 27 as if more fully set forth herein.

29. Defendant ICG owed a duty of care to Plaintiff as landlord to ensure the leased premises remained usable for the stated purpose of the tenant, to provide a reasonably clean

environment for Plaintiff to store its medical supplies and to ensure that other tenants' activities in the leased space did not negatively impact MDR's property.

30. Defendant ICG breached their duty of care by entering into a lease with THTH, while knowing that THTH's primary purpose for the premises would negatively affect other lessees.

31. Defendant ICG breached their duty of care by not ensuring, as promised, that MDR's supplies would be protected by tarps prior to THTH's construction in the adjacent space.

32. Defendant ICG's action of entering into the lease and failing to ensure the protection of MDR's property in the adjacent leasehold is the proximate cause of Plaintiff's damages.

33. Defendant ICG's entrance into the subsequent lease with THTH while being fully aware that their prospective activities posed a danger to the adjacent premises and items therein, was willful, careless, reckless, wanton and conscious disregard for the safety and security of the warehouse leased by MDR.

33. As a result of Defendant ICG's breach of care, sawdust and debris from the construction in the adjacent space covered Plaintiff's medical supplies and equipment, causing extensive damage rendering them unusable.

## COUNT FOUR
### Defendant THTH Negligence

34. Plaintiff repeats, repleads and re-alleges the allegations set forth in paragraphs 1 – 33 as if more fully set forth herein.

35. Defendant THTH owed a duty of care to not obstruct the surrounding lessees' usage of their leasehold.

36. Defendant THTH breached its duty of care by negligently commencing construction without taking the necessary precautions to ensure the containment of sawdust and debris.

37. Defendant THTH breached its duty of care as they were aware of the accumulation of sawdust and debris spreading into neighboring warehouse spaces and continued construction without regard for the damage being caused by their negligence.

38. Defendant THTH breached its duty of care by neglecting to protect MDR's supplies and equipment in the adjacent space, prior to beginning construction, from any manner of intrusion.

39. Defendant THTH breached its duty of care when they attempted to remove the sawdust by blowing it off of MDR's equipment and supplies, despite having been previously warned by MDR that doing so would only exacerbate the damage to the equipment.

40. Defendant THTH's failure to contain the dispersion of sawdust from the construction site, along with their failure to protect MDR's supplies and equipment with tarps and their feeble attempt to clean the equipment despite requests not do so, amounts to a willful, wanton, conscious and reckless disregard for the safety and security of the adjacent warehouse and the items therein.

41. Defendant THTH's actions are the proximate cause of sawdust covering and damaging MDR's supplies, rendering them unusable.

## COUNT FIVE
### Relinquishment of Security Deposit

42. Plaintiff repeats, repleads and re-alleges the allegations set forth in paragraphs 1 – 41 as if more fully set forth herein.

43. Pursuant to VA Code Ann. § 55-248.15:1, Landlord shall notify the tenant in writing within thirty (30) days of the date of determination of any deductions to be made from the tenant's security deposit.

44. Landlord shall make reasonable effects to allow Tenant to inspect the premises within 72 hours of delivery of possession. Upon completion of such inspection, Landlord shall furnish the Tenant with an itemized list of damages.

45. If the Landlord willfully fails to comply, the court shall order the return of the security deposit and interest thereon to the tenant, together with actual damages and reasonable attorneys' fees.

45. ICP failed to notify the Plaintiff within the thirty (30) day requirement, failed to allow Plaintiff to inspect the premises and failed to provide an itemized list of damages to the Plaintiff.

46. ICP has, to this day, unlawfully retained Plaintiff's security deposit.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MDR respectfully requests that this Court:

(i) Enter judgment in favor of MDR and against Defendants ICG and THTH;

(ii) Enter judgment awarding MDR actual damages from Defendants adequate to compensate MDR for Defendants' activities complained of herein and for any injury complained of herein, including but not limited to any and all medical supplies and equipment rendered unusable and lost profits, in an amount to be proven at trial;

(iii) Enter judgment awarding MDR punitive damages as a result of gross negligence on the part of the Defendants in the amount to be determined at trial.

(iv) Enter judgment awarding ICP to return the security deposit to MDR, together with interest and actual damages.

(v) Enter a judgment awarding attorneys' fees and costs, and

(vi) Order such other relief that the Court deems just and reasonable.

### DEMAND FOR TRIAL BY JURY

Plaintiff, MDR, requests this matter be tried by jury.

Respectfully submitted,

MDR SPECIALTY DISTRIBUTION CORPORATION

_/s/ Lawrence H. Woodward, Jr._
Lawrence H. Woodward, Jr., Esq.
VSB No.: 21756
Attorney for the Plaintiff,
**MDR SPECIALTY DISTRIBUTION CORPORATION**
Shuttleworth, Ruloff, Swain,
Haddad and Morecock, P.C.
4525 South Blvd. Suite 300
Virginia Beach, Va. 23452
Tel. No. 757 671 6000
Fax. No. 757 671 6004
Email: lwoodward@srgslaw.com